(C. D. 1964)

H. J. VAN DER RYN, INC.  
D. HANSER, INC. } v. UNITED STATES

United States Customs Court, Second Division

(Decided February 5, 1958)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Eugene F. Blauvelt* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Certain imported merchandise, described on the invoice as "ELECTRO COPPER BARS," was classified by the col-

lector of customs as articles in chief value of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was imposed thereon at the rate of 22½ per centum ad valorem.

It is the claim of importers that the merchandise is *eo nomine* provided for as copper rods within the provisions of paragraph 381 of said act (19 U. S. C. § 1001, par. 381), as modified by the General Agreement on Tariffs and Trade, *supra*, and dutiable at the rate of 1¼ cents per pound.

The pertinent text of the statutes involved is here set forth:

Paragraph 397, Tariff Act of 1930, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*       \*       \*       \*       \*       \*       \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal \* \* \*:

\*       \*       \*       \*       \*       \*       \*

Other (except slide fasteners and parts thereof)____ 22½% ad val.

Paragraph 381, Tariff Act of 1930, as modified, *supra*:

Copper in rolls, rods, or sheets_____ 1¼¢ per lb.

Four witnesses testified for the plaintiffs and one for the defendant.

Plaintiffs' first witness, Rudolph Marten, secretary and treasurer of H. J. Van Der Ryn, Inc., testified that his firm imported the subject merchandise, designated by it as "electro copper rods," the dimensions being 4 inches by one-fourth inch and 4 inches by one-half inch, in 12-foot random mill lengths.

John Busby, plaintiffs' second witness, testified that he was president of Busby Metals, Inc., distributor of nonferrous metals. He was employed by T. E. Conklin Brass & Copper Co. for 23 years, sold copper in 1929 and 1930, and, at the present time, is both buying and selling copper. He identified exhibit 1 as being identical with the 4 inches by one-half-inch size involved herein, except for length, the exhibit being 10 inches long. He stated that a sample, marked "Exhibit 2," is about 12 inches long and is identical with exhibit 1 except for length, and that the imported item was all in 12-foot random mill lengths. He further testified, based upon his 32 years of experience, that the merchandise represented by the exhibits is known throughout the trade as a rectangular copper rod; that it is sold generally to electrical contracting concerns for use in switchboards, switchboxes, panelboards, and things of that nature.

Busby was positive in his statement that there is no difference between a copper bar and a copper rod; that the terms are interchangeable; and that the merchandise was bought and sold that way all over the United States.

Through this witness, page 67 of a stocklist, published by the T. E. Conklin company, was received in evidence as exhibit 3, which, Busby stated, contained identical information with that which appeared in its stocklists published in 1928 and 1929. Said page 67 gives the dimensions and weight per lineal foot of material under the heading "HARD DRAWN BUS BAR COPPER (Rectangular Copper Rod) 10 to 12 Feet Long." Among the dimensions listed in exhibit 3 are one-fourth inch by 4 inches and one-half inch by 4 inches which are the dimensions of the merchandise in controversy here.

Busby insisted, however, that when orders are placed for the commodity, "They can call it rectangular copper rod; they can call it hard drawn copper rod; they can call it hard drawn Bus Bar copper. * * * Any one of those three."

The third witness, James Taylor Kemp, a metallurgical engineer and technical advisor with the American Brass Co. since 1923, with the exception of about 3 years when he was in the employ of the General Services Department of the United States, testified in regard to commercial products and the preparation of technical publicity for his company. He also testified to his familiarity with the method of producing merchandise, such as exhibits 1 and 2 herein, from wire bars which, after they are brought to a red heat in a furnace, "are entered into a stand of rolls, the bar is passed back and forth through these rolls maybe 10, maybe 15 times, and it comes out a rough rectangular ribbon," which may be 150 feet long. It is then coiled, cleaned, and cut to shorter lengths, after which it is drawn through a die of appropriate shape, mostly in rectangular form like exhibit 1. Depending upon the die through which the material is drawn, various other shapes may be produced. Similar results may be obtained by what is known as the extrusion process.

Mr. Kemp testified that, during the years 1929 and 1930, the American Brass Co. produced and sold material, such as exhibits 1 and 2 herein, under the name "copper rod."

Plaintiffs' fourth witness, Clarence Edgar Longwood, sales representative of the American Brass Co. since January 1, 1930, testified to having sold merchandise, such as exhibits 1 and 2, to distributors and consumers since that time under the name "copper rod." He stated that the terms "bar" and "rod" are used interchangeably; that his sales were to "companies that directed the material to be shipped to all parts of the United States," pointing out that many of the large companies have their headquarters in New York. When asked if merchandise, such as exhibits 1 and 2, was recognized both as copper bars or rods in the wholesale trade of the United States prior to June 1930, the witness replied in the affirmative.

Briefly stated, we have the testimony of two witnesses, Busby and Longwood, who were well qualified through commercial experience, which was continuous since prior to June 17, 1930, and whose dealings

with the wholesale trade in copper rods or bars seem to have extended throughout the principal markets for such commodities in the United States, that the merchandise in this case, represented by exhibits 1 and 2, has always been designated either as rods or bars, those terms being used interchangeably.

The witness Kemp, a metallurgical engineer and technical adviser, who is familiar with the production and distribution of merchandise like exhibits 1 and 2, testified that copper rods are made in various shapes, round, rectangular, or other shape, determined by the particular die that is being used, and that the American Brass Co., by which he was employed, sold merchandise, such as exhibits 1 and 2, under the name "copper rod."

Defendant introduced the testimony of Conrad A. Baecker, a department sales supervisor with the Chase Brass & Copper Co., who testified that bars and rods were offered to the trade as different items. Through this witness, page 69 of a catalog, issued by the U. T. Hungerford Brass & Copper Co. in 1907, was received in evidence as exhibit C. In that exhibit, there are listed "Hard Drawn Rectangular Copper Bars" and "Hard Drawn Round Copper Rod," both in varying thicknesses and widths.

Another catalog, issued by the Hungerford company prior to 1930, was received in evidence as exhibit D, with special reference to pages 10 and 11. Page 10 illustrates various shapes of brass rods, that is, round, square, hexagonal, rectangular, half round, and half oval. On page 11 of exhibit D, in addition to Tobin bronze rods in various shapes, which are illustrated, reference is made to hard-drawn round copper rods and hot-rolled rough finish square copper rods.

The witness also produced a pamphlet of the Hungerford company, published in 1926, which was received in evidence as exhibit E, with particular reference to pages 10 and 11.

Baecker's experience in the sales office in a supervisory capacity included the handling of claims and inquiries of various kinds which came in through the mail or by the telephone. He stated that a copper rod is a 1-dimensional commodity, whereas a copper bar is definitely a 2-dimensional commodity, although, later, he stated that rods can be round, square, hexagonal, or rectangular in shape and, in addition, there are shapes such as angles or channels. If the article were square, then, the witness said, it would be a rod.

It appeared, on cross-examination, that Baecker did not order merchandise himself nor did he conduct sales; that "we had a department for that," adding, further, that orders "are processed through the various members of the department, and I personally may not even see the order unless there is a question on it."

It is the contention of plaintiffs, based upon the record herein, that the involved merchandise responds to the common meaning of the word "rod," as it appears in said paragraph 381, which was also the

meaning of the word as understood in the copper industry at and prior to the enactment of the Tariff Act of 1930, as well as at the present time.

Plaintiffs invite the attention of the court to its decision in *Mohawk Iron & Steel Co.* v. *United States*, 30 Cust. Ct. 274, C. D. 1533, wherein it cited the following definitions of the term "rod":

Webster's New International Dictionary, 1930 edition—

rod, *n.* * * * 1. A straight and slender stick; * * * hence, any slender bar, as of wood or metal. * * *

*        *        *        *        *        *        *

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition—

rod. *n.* 1. A shoot or twig of any woody plant; a straight, slim piece of wood or other material; * * *.

In the *Mohawk* case, the question was presented as to whether certain round forms of an aluminum alloy $\frac{7}{32}$ of an inch in diameter in straight lengths of 88½ and 98½ inches should be classified for duty as wire or as rods, and, after reviewing the evidence at length and with the aid of lexicographical authorities and the record, we there concluded that the commodity was properly classifiable as aluminum rods.

Plaintiffs also cite our decision in *John V. Carr & Son, Inc.* v. *United States*, 33 Cust. Ct. 286, C. D. 1666, concerning imported articles in lengths of 7 feet and 12 feet, in a variety of shapes and dimensions in cross-section.

In the *Carr* case, we also cited the definitions of the word "rod," which were quoted in the *Mohawk* case, and also quoted the definition of the word "rod," as it appears in Audel's Mechanical Dictionary (1942):

Rod.—1. A wand, stick or long slender bar of any material, wood, iron, brass, steel, etc.

We there stated:

Based upon the testimonial record, and an examination of the exhibits, it is our considered opinion that the subject merchandise consists of rods or bars within the contemplation of paragraph 381, as modified, *supra.* * * *

Obviously, the authors who composed the above definitions were at a loss to clearly define a rod without, in part, describing a rod as a bar.

This consideration lends support to the testimony of the witnesses Busby and Longwood that, in the trade and commerce of the United States at and prior to 1930, the terms "bar" and "rod" in the copper industry were used interchangeably. Evidently, the weight of competent evidence establishes that the merchandise, represented by exhibits 1 and 2, was designated and known in the copper industry as rods.

In its brief, defendant, while contending that the merchandise in controversy is not within the common meaning of the term "rod" and that "rod" and "bar" are different and distinct articles, makes this observation:

Assuming without conceding that the common meaning of rod and bar is the same, it therefore must be assumed that Congress was aware of it, and by omitting the word "bar" from the articles listed in paragraph 381, *supra*, so far as it relates to copper, intended to extend the classification thereunder exclusively to copper rods, and to expressly exclude bars. * * *

The testimony in this case, however, to the effect that copper bars and copper rods are interchangeable terms supplies some reason at least why Congress did not deem it necessary to employ both terms.

Aided by the dictionary definitions of the word "rod" above quoted and limiting ourselves to the evidence in this case, we hold that the subject merchandise should be classified as copper rods in paragraph 381, *supra*, and dutiable at the rate of 1¼ cents per pound, as claimed by importers. The claim in the protest is sustained.

Judgment will issue accordingly.